UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|   |   |   |
|---|---|---|
| K.S., by her interim guardians ad litem, and DOROTHY SPIOTTA and PAUL SPIOTTA, | ) ) ) ) | NO. CV-08-243-FVS |
|                      Plaintiffs, | ) ) | FINDINGS AND RECOMMENDATIONS |
| v. | ) ) | |
| AMBASSADOR PROGRAMS INC.; AMBASSADORS GROUP, INC.; and PEOPLE TO PEOPLE INTERNATIONAL, | ) ) ) ) | |
|                      Defendant, | | |

**THIS MATTER** comes before the Court without oral argument based upon a dispute over the use of certain contracts (hereafter "Agreements") in further court proceedings. K.S., Dorothy Spiotta, and Paul Spiotta are represented by Timothy K. Ford and Katherine C. Chamberlain. Kenneth Isserlis is the guardian ad litem for K.S. Defendants Ambassador Programs, Inc., and Ambassadors Group, Inc. (hereafter "Ambassador"), are represented by Brian T. Rekofke, Jerry S. Phillips, and Geana M. Van Dessel. Defendant People to People International Inc. (hereafter "PTPI") is represented by James B. King.

**BACKGROUND**

There are three Defendants. They are Ambassador Programs, Inc., Ambassadors Group, Inc., and People to People International Inc. They have executed the Agreements governing their respective relationships with each other. The Defendants have disclosed copies of the Agreements to the Plaintiffs subject to a private confidentiality agreement prohibiting the Plaintiffs from

FINDINGS AND RECOMMENDATIONS - 1

revealing the contents of the contracts to the public. The Plaintiffs have filed a motion to compel (Ct. Rec. 100) requesting the Court to enter an order both releasing them from their agreement with the Defendants and authorizing them to use the Agreements in this action without restriction. The Defendants have filed a motion (Ct. Rec. 122) requesting the Court to issue a protective order maintaining the confidentiality of the contracts.

The Plaintiffs say they intend to file copies of the contracts in support of dispositive motions and will use the contracts at trial (Ct. Rec. 105). The parties have been ordered to file copies of the contract documents and related deposition testimony under seal so that the documents may be inspected *in camera* by the Court to determine whether they should be revealed to the public. Ct. Rec. 142

The issues have been referred to the undersigned Magistrate Judge for Findings and Recommendation (Ct. Rec. 143).

**FACTUAL ALLEGATIONS**

This is a case involving allegations of negligence, breach of contract, fraud, and consumer protection violations. Plaintiffs allege the Defendants made false representations about the People to People Student Ambassador Program, including but not limited to allegedly misrepresenting to the Plaintiffs that PTPI had selected K.S. to be a student ambassador in Australia during summer 2006. Defendants generally deny the allegations, but admit that Ambassador Programs, Inc. plans, organizes, markets and implements overseas trips for minor children, including the one attended by K.S.

FINDINGS AND RECOMMENDATIONS - 2

Following commencement of suit, Plaintiffs served discovery requests on the Defendants, asking for production of Agreements between the defendants, and any other documents, that describe the relationships between Ambassador and PTPI. See RFP #14, Ct. Rec. 102, Ex. 1. Defendants responded that the documents responsive to the request would "be produced after an appropriate confidentiality agreement is executed by the parties." Thereafter, the parties negotiated for either complete surrender of the agreements (Plaintiffs) or a protective order (Defendants). Unable to reach final agreement and with scheduled depositions of the Defendants' Chief Executive Officers approaching, the parties entered into a temporary agreement for the limited use of the agreements pending a final negotiated resolution by the parties or order from the Court. Defendants produced the Agreements pursuant to the temporary written agreement. The temporary written agreement provides that the Agreements will be produced but may only be used for the taking of specific depositions, that those depositions be sealed and that the Agreements and the deposition transcripts may only be viewed by counsel for the parties. Ct. Rec. 102, Ex. 6,7,8.

Following the depositions of the Defendants' CEOs, the Defendants filed their Joint Motion for Protective Order. Ct. Rec. 122. In support thereof, Defendants allege that the Agreements contain "privileged, confidential and proprietary matters." Ct. Rec. 123, 124.

Defendants argue that the contracts between PTPI and Ambassador spell out Ambassador's right to use and restrictions of said use, the trademark-registered and protected PTPI service mark

and logo in the educational student travel and exchange programs
that Ambassador conducts. The Defendants argue that the contracts
spell out details of what PTPI and Ambassador require from their
relationship with each other and that said details are
confidential and proprietary in nature. They argue that
Ambassador's travel "model" is unique and different than that used
by Ambassador's competitors and reveals information that would
give Ambassador's competitors a significant competitive advantage
if disclosed. The Defendants argue that the General Contract
agreement specifically lists royalty fees paid by Ambassador to
PTPI. They urge that this information, if revealed, would also
strengthen the bargaining position of competitor companies that
negotiate with PTPI and/or other companies Ambassador enters into
business with. They argue that by knowing the exact term of the
contracts, Ambassador's competitors would know the precise time to
contact PTPI to compete with Ambassador in any renewal of the
business relationship. Defendants assert that they have been
denied access to licensing agreements between their competitors
because of the competitive advantage they would have obtained. Ct.
Rec. 146. Finally, the Defendants argue that the contracts between
them have never been publicly disclosed and when produced in other
litigation matters have always been subject to a stipulation and
protective order similar to the one proposed by the Defendants
initially. In sum, Defendants request that the Court enter a
protective order prohibiting the Plaintiffs from disclosing the
contents of the contracts to the public and requiring the
Plaintiffs to file the contracts under seal if the contracts are
filed as part of the Court record. Ct. Rec. 128,p.2.

FINDINGS AND RECOMMENDATIONS - 4

**THE AGREEMENTS**

The Agreements have been filed under seal with the Court. Ct. Rec. 144. The relevant case law suggests that the disputed documents should be reviewed *in camera* by the Court to determine if those documents contain, in the Court's view, privileged, confidential and/or proprietary information or are otherwise subject to a protective order. Kamakana v. Honolulu, 447 F.3d 1172, 1177 (9th Cir. 2006).

In this case, the Agreements consist of the following documents:

1. General Contract Between People To People International and International Ambassador Programs, Inc. People To People Student Ambassador Program- Bates Stamped AMB001478-AMB001485 (hereafter "General Contract")

2. Consent To Assignment Agreement- Bates Stamped AMB001486-AMB001491

3. Amendment To General Contracts- Bates Stamped AMB001492-AMB001493

4. Letter Agreement- Bates Stamped AMB001494

5. Letter Agreement- Bates Stamped AMB001495

The Agreements are discussed in some detail in the depositions identified hereafter:

6. Deposition Transcript (partial) of Jeffrey Thomas- March 12, 2009

7. Deposition Transcript (partial) of Mary Jean Eisenhower- June 17, 2009

1    The Court has reviewed each of the documents identified *in*
2  *camera*. Plaintiffs have determined that the General Contract is
3  the primary agreement between the defendants that Plaintiffs
4  intend to use in this litigation in dispositive motions and at
5  trial. Ct. Rec. 145.

6                          **LEGAL STANDARDS**

7    Upon a showing of "good cause" the Court has broad latitude
8  to enter an order  requiring that "a trade secret or other
9  confidential research, development, or
10 commercial information not be revealed or be revealed only in a
11 specified way." Fed.R.Civ.P.26(c)(1)(G); *Phillips v. Gen. Motors*
12 *Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

13   "A party asserting good cause bears the burden, for each
14 particular document it seeks to protect, of showing that specific
15 prejudice or harm will result if no protective order is granted."
16 Foltz v. State Farm Mut. Auto. Ins.Co., 331 F.3rd 1122, 1130 (9th
17 Cir. 2003)

18   A district court must have "compelling reasons" in order to
19 shield a judicial record from public access when the record is
20 attached to a **dispositive** motion. *Pintos v. Pacific Creditors*, 565
21 F.3d 1106, 1115-16 (9th Cir.2009); *Kamakana v. City & County of*
22 *Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir.2006).

23   Under the compelling reasons standard, the court weighs
24 relevant factors; the Court's analysis is reviewed for abuse of
25 discretion. *Pintos v. Pac. Creditors Assoc.*, *supra.* "Relevant
26 factors include the public interest in understanding the judicial
27 process and whether disclosure could result in improper use of the
28

FINDINGS AND RECOMMENDATIONS - 6

material for scandalous or libelous purposes or infringement upon trade secrets." *Id.*, n. 6; *Kamakana*, 447 F.3d at 1179.

A "trade secret" is defined as:

Information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a)Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; **and** (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. RCW 19.108.010(4)(emphasis added).

## DISCUSSION, FINDINGS AND RECOMMENDATIONS

The Agreements contain certain material that could be considered proprietary trade secrets if broadcast to the public at large or, more specifically, to the Defendants' competitors. Those include details about (1) royalty fees and other compensation paid to PTPI by Ambassador; (2) the term of Ambassador's contract with PTPI; and (3) Ambassador's right to use the "People to People" trademark and logo. See Bodholt Dec. Re: Defendants' Motion for Protective Order (Ct. Rec. 123, p. 4, 8-9.) While Plaintiffs do not concede that this information is proprietary, they argue that the information sought to be protected has <u>already</u> been revealed in public filings and/or on the public web sites of either Ambassador or PTPI. See Declaration of Katherine C. Chamberlain, Ct. Rec. 138 and Ex. A,B,C and D thereto.

**Royalty Fees**:

The 2007 Annual Report of PTPI discloses at Note 11 that the total revenue generated from the relationship with the Ambassadors

Program was $3,245,385 for the year ended December 31, 2006. Ct. Rec. 138, Ex. D. This information discloses in the aggregate the financial relationship between PTPI and Ambassador for the year on which the action is premised, but does not disclose the financial arrangement per each student delegate as described in the General Contract. Thus, the reason stated by the Defendant for non-disclosure maintains its viability. It would detrimental to Ambassador if the individual student fee charged was known to the public and hence any competitor of Ambassador.

**Term of Contract**:

The 2008 Ambassadors Group Annual Report discloses as follows:

"We have the exclusive right from People to People International ("People to People") to develop and conduct student programs for kindergarten through high school students using the People to People name. We also have the non-exclusive right to develop, market and operate programs for professionals, college students and athletes using the People to People name. However, at the present time, we are the only entity that has been given this right by People to People. These rights, granted pursuant to agreements with People to People, expire in 2010 and , at our election, may be extended through 2020. People to People is a private, non-profit organization dedicated to the promotion of world peace through cultural exchange." Ct. Rec. 138, Ex. B. Emphasis added.

This information is significant in the Court's view. First, it clearly discloses to the public that the term of the Defendants' agreement expires in 2010. Secondly, it capsulizes or

summarizes the business model between the Defendants and discloses
that model to the public.

Since this information was disclosed in Ambassador Group's
Annual Report, it is difficult to understand the Defendants'
position that such information, contained in the General Contract
and as amended in the Amendment to General Contract, is
proprietary and constitutes a "trade secret" when the information
is not secret at all.

**Use of PTPI Trademark and Logo**:

Again, at p. 5 of the 2008 Ambassadors Annual Report, the
Defendants clearly disclose to the public that Ambassador has
registered or applied for a variety of service and trademarks. The
Annual Report states, in pertinent part, under the heading of
Service and Trademarks as follows: "In addition, we have the
right, subject to certain exceptions, to use People to People's
name, service mark and logo for use in our marketing. We believe
that the strength of our service and trademarks is valuable to our
business and intend to continue to protect and promote our marks
as appropriate. We believe that our business is not overly
dependent upon any one trademark or service mark." Ct. Rec. 138.
Emphasis added.

Thus, the Defendants clearly have made public the information
that they have a relationship for Ambassador to use the trademark
and logo of PTPI and that Ambassador is not overly dependent on
any one of the trademarks. The consideration paid to use same, if
any, is not disclosed in either the Annual Report or the
Agreements themselves.

FINDINGS AND RECOMMENDATIONS - 9

As to these particular items, the Defendants have failed to keep what they contend is private information *private*. The holder of a trade secret "must make reasonable efforts to maintain the secrecy of the material...Allowing private information to become public, even through carelessness, precludes protection as a trade secret." Woo v. Fireman's Fund Ins. Co., 137 Wash. App. 480, 490, 154 P.3d 236,241 (2007); RCW 19.108.010(4)(b).

An examination of the General Contract and the Consent to Assignment themselves reveals very little, if any, information about the model for education travel that Defendants assert is unusual and unique to the industry. In fact, there are no specific details about what is done during student or adult travel or how any excursion is organized in particular. It seems to the Court that such "nuts and bolts" information may be what is truly proprietary and subject to protective order. But that kind of information does not appear in the Agreements. The Defendants cannot, simply by proclaiming that the information contained in the Agreements or the deposition transcripts is "unique" or "unusual", make it so. As explained by the Ninth Circuit in Kamakana v. Honolulu: "Simply mentioning a general category of privilege, without further elaboration or any specific linkage with the documents, does not satisfy the burden." 337 F.3d 1172, 1184 (9th Cir. 2006).

Finally, none of the Agreements or the deposition transcripts contain information of a nature that might commonly be protected, i.e. names or addresses of participants, dates of travel programs, itineraries, information about industry contacts etc. This information, if disclosed to competitors, might truly harm the

Defendants. But the Defendants do not claim that the Agreements or deposition transcripts contain such confidential and proprietary information.

Accordingly, the Court **does not find** that the Defendants have met either the "compelling reasons" standard for overcoming the strong presumption of public access or shown "good cause" that specific prejudice or harm will result if no protective order is granted <u>except</u> as to the individual student delegate fee provisions contained in the General Contract and as discussed in the depositions.

Based on the above stated discussion and findings, the Court **RECOMMENDS AS FOLLOWS:**

1. That the District Judge grant Plaintiffs' Motion to Compel Agreements (Ct. Rec. 100) except for Paragraph 6 B. of the General Contract which should be redacted in its entirety before any public filing with the court. Further that any reference to specific student or adult fee amounts or volumes in the depositions of Mary Eisenhower (p. 108-109) or Jeffrey Thomas (p. 100-105) should be redacted before public filing with the court.

2. That the District Judge order that Plaintiffs may use and file the redacted Agreements and related deposition testimony without further restriction in this litigation.

Any party may object to a magistrate judge's proposed findings, recommendations or report within fourteen (14) days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any

FINDINGS AND RECOMMENDATIONS - 11

response to the objection shall be filed within fourteen (14) days
after receipt of the objection.  Attention is directed to Fed. R.
Civ. P. 6(d), which adds additional time after certain kinds of
service.

DATED this 2nd day of December, 2009.


_____s/James P. Hutton_____
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

FINDINGS AND RECOMMENDATIONS - 12